Okay, our second argument of the morning will come in Appeal No. 252754, Pavlovich v. Gaiman. Mr. Haggad. Good morning, your honors. May it please the court, I'd like to reserve five minutes for my rebuttal. This is a case where a victim of sex trafficking was denied her access to the United States courts, which was created by statute. Because the district court created a legal error in its interpretation of the extraterritorial reach of the Trafficking Victims Protection Act, that's an abuse of discretion. Because of that legal error, there are several other legal error steps along the way to the forum nonconvenience analysis that the district court undertook, which are themselves abuse of discretion. So although the forum nonconvenience analysis is reviewed for abuse of discretion, those threshold issues are reviewed by this court de novo, and a legal error in that case is what creates the abuse of discretion. So obviously, the major issue that we have to talk about here is the extraterritorial reach of Section 1595 of the Trafficking Victims Protection Act. Mr. Haggad, before we go too far down that road, can I just confirm, please, do you agree with the district court that your client is amenable to process within New Zealand and is subject to its jurisdiction? I would agree that my client is subject to the jurisdiction of New Zealand. Obviously, New Zealand has a connection to this case because that's where the events are alleged to have occurred. However, and this is the most important part, the Trafficking Victims Protection Act was created specifically for this type of case, where you have a United States resident who leaves the United States, commits sex trafficking offenses in a foreign jurisdiction, and then flees back to the safety of the United States. To the extent that such a person like that is acting under the protection of our laws, Congress got together and said, you know what, if someone does that, we're going to subject them to laws in the district in which they reside. And so even though Ms. Pavlovich is subject to New Zealand, Congress created this law specifically to allow people like her access to the United States courts. Can I respond to that? Okay. So you're very clear on that here in court, and you're very clear on that in your brief. What I worry about with that line of argument is that it is in tension with the direction the U.S. Supreme Court told us to follow in RJR Nabisco. And here's what I mean by that. The court said you need to move beyond general purposes, general congressional objectives. And the proper analysis on the extraterritorial application question is actually textual, good, bad, or indifferent. That's what they have told us. And so the textual indication needs to come from 1595A, correct? Correct, and it does. Where? Because it says that any violation of this chapter and if we look at the Roe case from the Fourth Circuit, that's the textual analysis that the Roe case undertakes. There's two other federal circuits which have also considered the extraterritorial application. That's the Rotha case, specifically the Rotha II, which we cited in our supplemental authority, and the Atticar v. Kellogg, Brown, and Root from the Fifth Circuit. So if that's right, how do you distinguish RJR Nabisco itself? I don't need to distinguish RJR Nabisco itself, Your Honor. RJR Nabisco itself is an argument about the structure. The structure here is very different between the RICO statute and the TVPA, in particular because the TVPA incorporates all of the chapter. So all of the criminal offenses in Section 1596 have extraterritorial application. Section 1595 says for any violation of this chapter, so 1589, 1590, 1591, all of those are directly incorporated. That's very different than the RICO statute where we're looking at because the RICO statute, one, doesn't apply all the predicate offenses extraterritorially, and two, the RICO statute doesn't apply to all potential civil plaintiffs, only people injured in their business or their property. And that's simply not the case if we look back at the legislative history and the reauthorizations in 2003 and 2008 of the TVPA. It is clear from the text that Congress intended for this to have extraterritorial reach. It's an international statute dealing with an international problem implementing our treaty obligations to fight against sex trafficking. Like I said, this is the sort of case that the laws specifically envision here is that a resident of the United States will leave the United States, commit these offenses, and then come back to the United States. Congress opened a forum for those litigants to come here and have those claims adjudicated. If we find that the district court did not abuse its discretion in its forum nonconvenience analysis, do we even need to get to the extraterritorial issue? I think that would put the cart before the horse, Your Honor. I think in order to determine whether the district court abused its discretion, you have to answer the extraterritorial issue. What if we assume it's extraterritorial and find that the district court did not abuse its discretion? Again, you would have to move several other steps beyond that because if you find that it has extraterritorial reach, then the district court did not properly base or balance the public and private interest factors. Because the district court found that there was no extraterritorial application, it did not give appropriate weight to the public interest factor. One of the things the district court said is that, you know, Wisconsin jurors might wonder why they were deciding a case to which it did not believe the U.S. had any interest. But the congressional intent in opening the forum is that interest. And so if you find that there is extraterritorial reach in Section 1595, like the Ninth and the Fifth and the Fourth, then that analysis, that forum nonconvenience analysis, is poisoned from the get-go. There is automatically an abuse of discretion there. But there's other factors that we're considering in the forum nonconvenience. Even if that factor wasn't weighed appropriately, couldn't we still uphold this on abuse of discretion? To do so, you would have to look at the way the forum nonconvenience analysis was conducted, and you would have to rubber stamp what was essentially a box-checking exercise by the district court below. And I don't think this court would do that. Let's look at the forum nonconvenience, especially the private interest factors that were advanced by the defendant, Apley, here. In this case, he did not make the requisite showing that the witnesses he claims that he would need for his case were actually unavailable or unwilling. That is a necessary step in the forum nonconvenience analysis. It's not just, oh, there are witnesses that may be outside of this court's jurisdiction that I might like to call. That's going to be true in any case where we're dealing with something that happened outside the specific jurisdiction of the court. So the forum nonconvenience analysis actually asks, one, are these witnesses actually unwilling or unavailable? And we have the completely unrebutted affidavit from our expert, Mr. Wass, who said that Mr. Gaiman would have the exact same compulsory process in the District of Wisconsin that he would have in a New Zealand court for securing the availability of an unwilling witness. Can you go back a second to a point when we were talking about 1595A, an extraterritorial application? If we conclude, consistent with your view, that it does have extraterritorial application, is it your position that the doctrine of forum nonconvenience as a matter of law cannot operate? In other words, on a theory that Congress, by providing extraterritorial application in 1595, has entirely displaced or set aside the doctrine of forum nonconvenience, it cannot operate full stop categorically? I think that there may be some sort of edge case in which forum nonconvenience could still operate in something like that, but it would require that private public balancing act to heavily favor the private interest of the foreign jurisdiction because the public interest, that's what we're talking about there when we find the extraterritorial application. So you're not making the argument, this is where I don't know that this was, that you pushed this in the district court at all, but you're not making the argument before us that as a categorical matter, the doctrine can have no application? And I want to be very, very careful here. I am not making the argument that there is no potential case where forum nonconvenience could apply in a situation like that. I am saying that there is strong textual arguments from the precedents of the United States Supreme Court, the U.S. versus National City Lines and the Illinois Century Railroad Company cases that indicate that where Congress has specifically opened a forum, I believe the language is that the district court cannot facilely dismiss Congress's choice of opening a forum in favor of a foreign jurisdiction. That's not to say that there may not be some factor that justifies that. So I don't want to say universally forum nonconvenience cannot be there. I'm saying that someone making a forum nonconvenience argument in that case faces a much higher burden than the average case. So you're arguing that it would be a very strong factor in the public interest analysis, not that extraterritoriality would preclude the application of the forum nonconvenience doctrine? A very strong factor to the point of being almost overwhelming, yes. And that's why I'm saying that if the district court makes an error of judgment in the extraterritoriality, that legal error is the abuse of discretion that we're talking about. And I see that I'm out of my time. I'll reserve all the rest of mine. We're going to give you, we'll give you your rebuttal time. Can I, can I indulge you for one more question? Absolutely.  Nobody has focused on this, and I'm not sure it needs to be a focus, but I want to get the benefit. I'm going to ask your colleagues on the other side the same question. Ms. Pavlovich's complaint absolutely contains the federal claim, but it also contains a series of common law claims. Do you remember that? I do, yes. Okay. Assault, battery, intentional infliction of emotional distress. Though, how do we deal with the common law claims? The analysis of the common law claims is not going to, it doesn't rise and fall with any conclusion that we draw about 1595. 1595 is the federal statute. Right. I don't know, when I look at the common law claims, they're brought in a federal court in Wisconsin, but they're not brought in the name of Wisconsin common law. They're not, they're not brought in the name of, I don't even know, not brought in the name of anything in New Zealand law, at least on their face. So what, what are we to make of these claims? Well, I think that they do rise and fall with 1595 because we are asking the court in our complaint to exercise supplemental jurisdiction over them because they're the same case or controversy. The district courts seem to resolve them just kind of, almost kind of silently on the forum non-convenience, that the forum non-convenience analysis would apply the exact same way to the common law claims as it would the federal claim. I don't know that I can, I can agree with that because, again, when we're looking at the adequacy of the alternative forum, and that's something else that I'd be happy to speak to if the court wants, there has to be some remedy in the alternative forum, and New Zealand's law has pretty much litigated tort law out of existence there. No, I understand that. What are the common law claims in your, are they Wisconsin common? The, the, the alleged conduct occurred in New Zealand, so I don't know how Wisconsin law could apply in New Zealand. Well, Wisconsin law would apply here because it's a Wisconsin defendant. That's, that's our argument as to why. The conduct that applied extraterritorially, and indeed outside the United States. Correct, but to a United, conduct by a United States actor. Okay, all right. We'll give you the rebuttal time. Thank you. Thank you. Is it Mr. Fall? Thank you. May it please the court. Brian Fall for the defendant appellee, Neil Gaiman. This appeal arises from civil claims brought in Wisconsin by a New Zealand citizen against a New Zealand permanent resident for conduct that occurred entirely within New Zealand. The only tie to Wisconsin is that Gaiman is also a U.S. permanent resident who owns a piece of property in Wisconsin. Nothing related to any of the claims touched the Western District of Wisconsin. The appellant's false and salacious allegations were brought in Wisconsin not because of any ties to Wisconsin, but because the remedies are better there. This sort of forum shopping where the allegations have such tenuous ties to the Western District of Wisconsin is exactly the case that should be dismissed on forum non-convenience grounds. The district court did not abuse its discretion when it held that New Zealand was the more convenient forum for these claims because the remedies available in New Zealand are both adequate and available and the public and private interest factors weigh in favor of New Zealand being the more convenient forum. Mr. Fall, before we go down that path, I want to ask you the same question about your client that I asked Mr. Haygood. Do you agree that your client has consented to accept service of process in New Zealand and is subject to jurisdiction there? Yes, Your Honor. Now, a forum is available if the parties are amenable to process and as the court just asked, Mr. Gammon has noted that he is amenable to process in New Zealand and is subject to there. So the forum is available. An alternative forum is adequate if it provides the plaintiff with a process to obtain some remedy for some alleged wrong. The remedy needs to not be as robust as in the U.S. system. It just can't be so inadequate that amounts to no remedy at all. Courts have held that remedies under the New Zealand Accident Compensation Act are adequate. And the appellant sets no cases to the contrary. Under the New Zealand Compensation Act... What would her remedies be under the administrative procedure of the Compensation Act? It was kind of... I know you've argued mental health treatment, but she's not there. She already did receive some mental health treatment, but she'd have to go back to get more. Is there something beyond that from your viewpoint that is available to her under the Act? Under the Act, I'm not aware of anything that's available to her other than the mental health treatment. However, just because the fact that a plaintiff disavails themselves of a particular remedy does not mean that remedy is not available or inadequate. The New Zealand Accident Compensation Act parties contain mental health treatment. And we would argue that that's equivalent to compensatory damages here in the United States where the compensatory damages would be awarded to provide... to pay for mental health treatment. So those damages are equivalent. Additionally, in New Zealand, the plaintiff can sue for exemplary damages. And because in New Zealand, the plaintiff can attain mental health treatment and has the opportunity for exemplary damages, the remedy there is not so inadequate that it amounts to no remedy at all. And accordingly, the district court did not abuse its discretion. Let's talk about the federal statute for a moment.  Okay. There does seem to be something different about the way Congress worded this particular statute, 1595A, and the RICO statute that was analyzed in RJR Nabisco. What's your reaction to that? While there is some distinction, I would argue, Your Honor, that the overall structures are very the same. And when you look at the TVPRA, you should look at in its totality, including Section 1596, and in the way that the statute was enacted and amended. By enacting 1596, we can assume that Congress was aware of the resumption against extraterritorial reach. 1596 is couched entirely in criminal language. At the time it enacted 1596, 1595 was already in the books. And in fact, at the same time it enacted 1596, it expanded the criminal reach, the civil reach of the TVPRA. If Congress, knowing that it has to be clear under RJR Nabisco about the extraterritorial reach of a statute, especially the civil statute where issues of federal comity are more important, it would have put that language in 1596. There is nothing in 1596 that applies to the civil application of the TVPRA. Roberts. Okay. Assume I'm you're clear on that. Just assume for a second we disagree with you, contrary to your argument. Okay. Can the doctrine of forum nonconvenience nonetheless apply? Yes, Your Honor. There is no court that says that an extraterritorial reach of a civil statute takes it out of the forum nonconvenience analysis. It's just one factor of many, and there's no clue. Does that make sense to you? Yes, Your Honor. In other words, you have to — if we conclude, contrary to your argument, that the U.S. Congress intended for this statute to apply extraterritorially, wouldn't you then gut or just really empty 1595 of all of its content and protections by coming in with the forum nonconvenience doctrine? No, Your Honor. That's not to say forum nonconvenience is appropriate in every case. There's a balancing test that the courts may undergo. Many of the cases that have decided that TVPR cases can be brought in the United States, those all have significant ties to the United States. This case is significantly different. The allegations here don't even touch the Western District of Wisconsin, and the claims don't really amount to a violation of something that's covered by the TVPRA. There was no sex trafficking. Appellants' own text messages reflect that she was enthusiastically in a consensual relationship with Mr. Gaiman. But that's getting to the merits. That's not getting to the appropriate forum to address those merits. Right. But even if this applies extraterritorially, the district court below did consider. The district court did consider the extraterritoriality of the TVPRA, and it determined that, on balance, it shouldn't apply extraterritorially. But even if it did, it wouldn't have changed its analysis. The greater weight of all the public and private interest factors still favored bringing this case in New Zealand, because that's where everything happened. And presumably everything that you're arguing today, you would say the common law claims go with it. That's right. First of all, they were here on supplemental jurisdiction. If the underlying jurisdiction of the federal questions are dismissed, they wouldn't have any basis here. But I also agree with the court that under a form of nonconvenience grounds, they could be dismissed as well. Turning back to the private interest factors, the private interest factors balance the relative convenience of the form for the parties. Here, as the district court noted, the private interest factors in this case focus primarily on the location of the witnesses and the compulsory process for obtaining testimony from those witnesses. Those factors favor venue in New Zealand. Other than the parties of Palmer, all witnesses are located, or nearly all witnesses are located in New Zealand. And Palmer, who the plaintiff has identified as a key witness, is in Massachusetts and outside of the Western District of Wisconsin's subpoena power. But she's consented to jurisdiction in New Zealand. The witnesses identified by Gaiman will be used to challenge the appellant's claims and allegations. And as the district court noted, credibility will be a key issue. However, those witnesses are outside of Wisconsin District Court's subpoena power. And New Zealand is not a member of the Hague Convention. New Zealand does not allow for general discovery. And Gaiman would have to petition the New Zealand High Court to obtain compulsory depositions in production of documents from New Zealand witnesses. And there are no assurances that the New Zealand High Court will compel New Zealand witnesses to participate. Gaiman deserves more than a hope of compulsory process in Wisconsin when defending himself against these claims. Again, the question is not whether it would be impossible for the defendant to present a defense in the Western District of Wisconsin. The question is whether New Zealand is the more convenient forum. New Zealand is not subject to the MLAT treaty, is that correct?  The plaintiff's relative proximity to the U.S. does also not tip the scales. As the district court noted, if the appellant's own convenience was a priority, she could have brought the suit in the United Kingdom where Gaiman is a citizen. The district court did not abuse the discretion when it determined on the private interest factors New Zealand is clearly the more convenient forum. The public interest factors also support dismissal. Wisconsin has virtually no connection other than Gaiman is a permanent resident and owns a home there. Everything occurred in New Zealand. All the events took place there and nearly all the witnesses are there. And as we discussed before, even if the forum, even if the TBPRA applies extraterritorially, the district court did consider that and determined that on balance, the great weight of all the other factors supported New Zealand being the greater forum. The district court did not abuse its discretion in making that determination. Consequently, the appellee asked this court to affirm the district court and hold that the district court did not abuse its discretion when it held that civil claims brought by a New Zealand citizen against a UK citizen who's also a New Zealand permanent resident for conduct that occurred entirely within New Zealand must be brought in New Zealand. If there's no further questions. I have just one last question, please. Do you know the status of the case in the First Circuit against Ms. Palmer, your client's former spouse, who was charged with essentially the same thing? Yes, that was dismissed in the district court and it's under appeal currently. Have they heard argument yet in the First Circuit? No, I don't believe all the briefing has been completed yet. Thank you. Thank you. Okay, thank you, Mr. Fallon. Mr. Haygood, you got rebuttal time. Thank you, Your Honor. May I please say it again? To answer the judge's question, we have recently submitted the opening brief in that appeal. It was filed on March 30th. We were awaiting the responsive brief. One thing I would like to push back on my colleague's argument here is that there are no significant ties of this case to the United States of America. That's not true. Number one, Congress created the TVPA specifically because we did not trust foreign jurisdictions to adjudicate these things correctly. Number two, Neil Gaiman is a lawful permanent resident of the United States who resides primarily in Wisconsin. His residence in Wisconsin predates his residence in New Zealand. Yes, he is a permanent resident of New Zealand, but he doesn't live there. He lives here. That's why the TVPA allows us to bring the suit here. Finally, probably the most significant and important witness in this case for either side is going to be Amanda Palmer. And Amanda Palmer is only subject to process here in the United States. She's not subject to compulsory process in the United Kingdom, and she's not subject to compulsory process in New Zealand. Only in the United States can she be available as a witness if she is unwilling to testify on Scarlett's behalf. And one of the things that was addressed in the briefing, and I believe anticipated by Your Honor's questioning, is whether Ms. Palmer has consented to jurisdiction in New Zealand. She's consented to jurisdiction if a claim is brought against her in the New Zealand courts. But as we know from the last affidavit, there is no claim that can be brought against Amanda Palmer in the New Zealand courts. So she has effectively not consented to anything because what she didn't say is, I consent to be a witness in New Zealand. So if we're looking at the convenience of the parties and the availability of witnesses, that alone should be dispositive, because the only place that Amanda Palmer can be forcibly hailed into court is here in the United States, because she is a United States citizen. She outside the subpoena power of the district court? She would be outside the subpoena power, but not outside the ability of compulsory process for a deposition or something like that. So if we're looking at those factors, that is another one of the factors that I'm saying that the court below did not properly consider in balancing the public and private factors. It treated it as a mere box-checking exercise and did not actually dig down into it in the way the forum non-convenience analysis requires the court to do. And because it didn't do the analysis the way this court requires it, it needs to be reversed. Thank you. Okay, Mr. Haygood, thanks to you and your colleagues. Mr. Fall, to you and your colleagues as well. We'll take the appeal under advisement. Thank you, Your Honor. Thank you, Your Honor.